**Eugene PATTON, Petitioner,**

**v.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**No. 84–3351.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 16, 1985.

Decided June 3, 1985.

554

Pasco L. Schiavo (Argued), Hazleton, Pa., for petitioner.

Francis X. Lilly, Sol. of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Counsel for Appellate Litigation, Mark Robson (Argued), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before ADAMS and WEIS, Circuit Judges, and POLLAK, District Judge.*

* Hon. Louis H. Pollak, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Mr. Patton has raised a number of non-statutory grounds for overturning the Board's decision. We need not reach these arguments, for we find that the Board's determination is not in

## OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

Petitioner Eugene Patton seeks review of an order of the United States Department of Labor Benefits Review Board ("the Board"), which dismissed as untimely his appeal from the adverse decision of an Administrative Law Judge on his application for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* The Board concluded that, because Mr. Patton's appeal was filed more than thirty days after the ALJ's decision was issued, the Board lacked jurisdiction over the appeal. *See* 30 U.S.C. § 932(a); 33 U.S.C. §§ 921(a), 919(e); *Insurance Co. of North America v. Gee,* 702 F.2d 411 (2d Cir.1983). Mr. Patton argues that his appeal was filed less than thirty days after his counsel received notice of the ALJ's decision, and is therefore timely.[1] *See* 20 C.F.R. §§ 725.478, 725.364; *Youghiogheny & Ohio Coal Co. v. Benefits Review Board,* 745 F.2d 380, 382 (6th Cir.1984). For the reasons that follow, we reverse the Board's determination, and remand for consideration of Mr. Patton's appeal on the merits.

I

The facts are uncomplicated. In April 1978, Mr. Patton filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* A hearing on Mr. Patton's claim was held before the ALJ on August 10, 1981. The ALJ issued his decision denying benefits on August 24, 1982; the decision and order was filed with the Deputy Commissioner on August 30, 1982. A copy of the ALJ's decision was sent to Mr. Patton;[2] however, no copy was sent to Mr. Patton's attorney. Instead, the attorney first learned that his client's claim had been denied during the course of a conversation with Mr. Patton in September 1983, more than one year after the ALJ's deci-

accord with the governing statutes and regulations.

2. The record in this case tells us neither when Mr. Patton received his copy of the ALJ's decision nor when that copy was mailed by the ALJ. The parties agree, however, that service was

sion was issued.[3] Mr. Patton's attorney promptly contacted the ALJ, who mailed him a copy of the decision on September 28, 1983.[4] Mr. Patton's attorney filed an appeal with the Board on October 14, 1983— less than thirty days after the attorney received notice of the ALJ's decision, but more than thirteen months after that decision was issued and filed with the Deputy Commissioner. On April 16, 1984, the Board decided that "[b]ecause claimant's Notice of Appeal was not timely filed within thirty (30) days of the date on which the Decision and Order was filed, the Board does not have jurisdiction to consider this appeal." *Patton v. Director, Office of Workers' Compensation Programs*, BRB No. 83–2462 BLA, Order (April 16, 1984).

As a threshold matter, we must determine whether the thirty-day period for filing appeals is measured from the date the ALJ's decision is served on the parties according to the governing statutes and regulations. If service must be made before the thirty-day period may run, we must go on to consider whether the petitioner was properly served in conformity with the governing law.

made on Mr. Patton sometime shortly after the ALJ's decision was issued in August 1982.

3. On September 20, 1983, Mr. Patton's attorney sent the following letter to the administrative law judge:

September 20, 1983

Hon. Aaron Silverman
Administrative Law Judge
Office of Administrative Law Judges
U.S. Department of Labor
Suite 700, Vanguard Building
111 20th Street, N.W.
Washington D.C. 20036
RE: Eugene Patton vs. Director, Office of Workers' Compensation Programs, Case No. 81–BLA–596: OWCP No. 200–09–0071
Dear Mr. Silverman:
By accident this week I found out that my client, said Eugene Patton, the within black lung claimant, was notified back in 1982 by your office of your denial of and decision denying his black lung benefits claim.
I never received a copy thereof [*sic*] said opinion or decision or notice, and I am now writing to ask that your office please send me a copy of the same as soon as possible. My client, depressed, distraught and despairing as a result of this denial, just did not call me and also assumed that I had received a copy of said notice or decision.
How I discovered the same was quite by accident, that is, I had to speak to Mr. Patton about another matter and told him that I had not yet heard from your office by [*sic*] that a decision would "soon be forthcoming". To my dismay, he informed me that he had heard last year about the decision and just assumed that I received a copy of the same or notice of the same because I had been receiving copies of everything else to date, a perfectly true statement of the facts. I had been receiving copies of everything until your decision.
If I had been sent a copy of said decision or notified of the same, I would greatly appreci-
ate your office informing me of this and sending me proof of the same. Anything is possible, even mental lapse, but I sincerely believe I never received any such notice or denial, and all of my records are further proof of this.
Of course, I must ask that our right to appeal such a denial be preserved as of the date that I do receive notice of said denial or your decision from your office.
Thank you for your consideration. May I hear from you in the very near future.
Sincerely,
Pasco L. Schiavo
PLS: kjm
cc: Eugene Patton

4. Following is the ALJ's letter of September 28, 1983:

28 Sep 1983
Pasco L. Schiavo, Esq.
Attorney at Law
306 Northeastern Building
Hazleton, Pennsylvania 18201
RE: Eugene Patton vs. Director, OWCP
Case No. 81–BLA–596
OWCP No. 200–09–0071
Dear Mr. Schiavo:
Enclosed is a copy of my Decision and Order of August 24, 1982, in the subject case which you inquired about in your letter of September 20, 1983.
Although you are named as the Claimant's attorney, you were not included on the service sheet.
I regret the error. In all probabilities you did not get a copy of the decision.
Your request to preserve your right to appeal should be addressed to the Benefits Review Board.
I trust this will be helpful to you.
Sincerely yours,
AARON SILVERMAN
Administrative Law Judge
AS/rw
cc: Robert Lotz

## II

■ The starting point for our analysis is the incorporation provision of the Black Lung Benefits Act, 30 U.S.C. § 932(a). With certain qualifications, that provision incorporates various sections of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*, into the Black Lung Benefits Act.[5] Among the LHWCA provisions which are thereby applied to those claiming black lung benefits are 33 U.S.C. §§ 921(a) and 919(e), which govern, respectively, the time in which an appeal must be taken from an ALJ's award or denial of benefits, and the notice of the ALJ's decision which must be provided to the parties. The provision establishing the time for appeal states simply:

> A compensation order shall become effective when filed in the office of the deputy commissioner as provided in section 919 of this title, and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subdivision (b) of this section, shall become final at the expiration of the thirtieth day thereafter.

33 U.S.C. § 921(a). As the language makes clear, section 921(a) fixes a thirty-day time period within which an appeal of an adverse decision must be taken or lost. *See Dawe v. Old Ben Coal Co.,* 754 F.2d 225, 227 (7th Cir.1985); *Townsend v. Director, Office of Workers' Compensation Programs,* 743 F.2d 880, 881 (11th Cir.

Anne L. Weisman, Esq.

5. Section 932(a) of title 30 states that:
   Subject to section 28(h)(1) of the Longshore and Harbor Workers' Compensation Act Amendments of 1984, during any period after December 31, 1973, in which a State workmen's compensation law is not included on the list published by the Secretary under section 931(b) of this title, the provisions of Public Law 803, 69th Congress (44 Stat. 1424, approved March 4, 1927) as amended, and as it may be amended from time to time [33 U.S.C. § 901 et seq.] (other than the provisions contained in [listing excluded sections] ), shall (except as otherwise provided in this subsection or by regulations of the Secretary [of Labor] ...), be applicable to each operator of coal mine in such State with respect to death or total disability due to pneumoconiosis arising out of employment in such

1984); *Trent Coal, Inc. v. Day,* 739 F.2d 116, 117 (3d Cir.1984). The running of that period is triggered by the filing of the ALJ's decision "as provided in section 919." 33 U.S.C. § 921(a); *Trent Coal, supra,* 739 F.2d at 117–18.

Subsection (e) of section 919 governs both the submission of the ALJ's decision to the deputy commissioner and the notice which must be provided to the parties. It states that "[t]he order rejecting the claim or making the award ... shall be filed in the office of the deputy commissioner, and a copy thereof shall be sent by registered mail or by certified mail to the claimant and to the employer at the last known address of each." 33 U.S.C. § 919(e). Thus, section 921(a) requires, as a precondition for the running of the time period for perfecting an appeal, that the ALJ's order be filed "as provided in section 919," and the latter section provides that the order must be both (1) submitted to the deputy commissioner and (2) served on the parties. This statutory configuration strongly suggests that proper service is an essential part of the filing process, which in turn triggers the thirty-day period for appeal. The regulations which implement section 919(e) confirm this inference. Under the regulations, the ALJ is required to send copies of the decision and order to the parties' representatives "[o]n the same date" that the order is "considered to be filed." 20 C.F.R. §§ 725.478; 725.364.[6]

mine, or with respect to entitlements established in paragraph (5) of section 921(c) of this title. In administering this part, the Secretary is authorized to prescribe in the Federal Register such additional provisions, not inconsistent with those specifically excluded by this subsection, as he deems necessary to provide for the payment of benefits by such operator to persons entitled thereto as provided in this part and thereafter those provisions shall be applicable to such operator.

6. 20 C.F.R. § 725.364 provides that service is to be made on the parties' representatives. *See infra* text at 10. The quoted passages in the text are taken from 20 C.F.R. § 725.478, the full text of which reads:
   On the date of issuance of a decision and order under § 725.477, the administrative law judge shall serve the decision and order on all

The recent decision of the Court of Appeals for the Sixth Circuit in *Youghiogheny & Ohio Coal Co. v. Benefits Review Board*, 745 F.2d 380 (6th Cir. 1984), buttresses the conclusion that proper service is necessary to begin the running of the thirty-day appeal period. The petitioner in *Youghiogheny & Ohio Coal Company* received notice of a hearing officer's adverse decision almost four years after that decision was issued. *Id.* at 381. Eight days after receipt of the decision, the petitioner appealed to the Benefits Review Board, which held, as here, that it was without jurisdiction to hear the appeal. The Board initially argued that improper service of this sort did not operate to extend the time for filing an appeal. *Id.* at 381–82. In its brief before the Sixth Circuit, the Board reversed its position, and conceded that the thirty-day appeal period did not begin to run until the petitioner was served with a copy of the hearing officer's decision. *Id.* at 382. The court concluded that the Board's revised view of the governing law was the correct one. *Id.*[7]

We agree with the Sixth Circuit's determination (and hence with the Board's position on appeal in *Youghiogheny & Ohio Coal Company*). Our reading of sections 921(a) and 919(e) of title 33, and of the regulations enacted thereunder, leads us to find that service on the parties is meant to be an integral part of the process by which the ALJ's decisions are filed. We therefore hold that the thirty-day appeal period prescribed by section 921(a) does not begin to run until service is made according to the strictures of section 919(e) and the governing regulations.[8]

## III

Section 919(e) directs the ALJ to send copies of his decision by registered or certified mail "to the claimant and to the employer at the last known address of each." 33 U.S.C. § 919(e). In implementing this provision, the Secretary of Labor has promulgated regulations which require such notice to be sent directly to the parties' counsel. The regulation governing service of compensation orders states that "[o]n the date of the issuance of a decision and order ... the administrative law judge shall serve the decision and order on all parties to the claim," 20 C.F.R. § 725.478; a separate regulation provides that "[n]ot-

---

parties to the claim by certified mail. On the same date, the original record of the claim shall be returned to the [Division of Coal Mine Workers' Compensation] in Washington, D.C., and the decision and order shall be considered to be filed in the office of the deputy commissioner. Immediately upon receipt of a decision and order awarding benefits, the deputy commissioner shall compute the amount of benefits due, including any interest or penalties, and the amount of reimbursement owed the Fund, if any, and so notify the parties. Any computation made by the deputy commissioner under this paragraph shall strictly observe the terms of the award made by the administrative judge.
In *Trent Coal, Inc. v. Day*, 739 F.2d 116 (3d Cir.1984), this court reversed a Benefits Review Board decision, based on § 725.478, which tied the running of the thirty-day period to the return of the original of the decision to the Division of Coal Mine Workers' Compensation in Washington. *Id.* at 117–18. The court determined that the thirty-day period could not, consistently with the statute and with other governing regulations, begin to run prior to the date on which the deputy commissioner received the ALJ's decision. *Id. See infra* note 14.

**7.** Prior to its consideration of the issue in *Youghiogheny & Ohio Coal Company,* the Board itself had found that "[f]or a compensation order to become effective and trigger the running of the appeal period, it must be both filed and mailed." *Morris v. Clinchfield Coal Co.,* 3 BLR 1–49, 1–50 (1981). *See also Bennett v. Director, Office of Workers' Compensation Programs,* 717 F.2d 1167, 1168–69 (7th Cir.1983) (dicta) (under the governing regulations, an aggrieved party has thirty days from the date of service in which to appeal to the Board). *Cf. Dawe v. Old Ben Coal Co.,* 754 F.2d 225, 227–28 (7th Cir.1985) (Board properly dismissed claimant's appeal where, due to the error of a secretary in claimant's attorney's office, the appeal was not filed until four days after the thirty-day appeal period had run; court notes that "[t]here was no failure of notice in this case").

**8.** We need not (and do not) decide whether the thirty-day period begins to run on the date the ALJ's decision is *received* by the aggrieved party, or whether the triggering event is the *mailing* of the decision to the parties. The result as to Mr. Patton is the same under either approach, since his appeal was filed sixteen days after a copy of the ALJ's decision was mailed to his attorney.

ice given to any party of any ... determination ... shall be sent to the representative of such party and such notice shall have the same force and effect as if it had been sent to the party represented." *Id.* § 725.364.

The agency does not dispute that Mr. Patton's attorney did not, in fact, receive notice of the ALJ's decision until September 1983.[9] Nor is there any dispute about the relevant chronology after the attorney received a copy of the ALJ's decision: the appeal was filed on October 14, 1983, sixteen days after the ALJ's decision was sent to the attorney. Thus, to the extent that the quoted regulation is the measure of the agency's legal obligation in this case, Mr. Patton's appeal was filed within the thirty-day period prescribed by section 921(a) of title 33.

The agency comes before the court in the somewhat anomalous position of arguing that the quoted regulation, duly promulgated by the Secretary, is invalid. The regulation is said to be invalid on the ground that it is inconsistent with the statutory directive that notice be sent "to the claimant and to the employer." We disagree, both because (1) we find section 919(e) susceptible to alternative constructions, and (2) we find that the agency has the authority under the Black Lung Benefits Act to refine the procedural provisions of the LHWCA which the BLBA incorporates.

The statutory directive to which the agency refers is section 919(e)'s requirement that copies of compensation orders be sent "to the claimant and to the employer." The agency accords the terms "claimant" and "employer" more clarity than they possess. On its face, the statute might reasonably be read to require notice either to the parties themselves or to the parties' legal representatives.[10] In promulgating 20 C.F.R. § 725.364, the Secretary has simply selected one of these semantically justifiable interpretations of the statute. The power to issue such clarifying regulations is granted by the statute, *see* 30 U.S.C. §§ 932(a), 936(a),[11] and the exercise of the power in this instance appears wholly appropriate in order to apprise interested parties of the notification system the agency intends to use.

To support its somewhat cramped reading of section 919(e), the agency relies on *Insurance Co. of North America v. Gee*, 702 F.2d 411 (2d Cir.1983). *Gee* held, in the context of an appeal of a benefit award under the LHWCA, that the Secretary could not, consistently with section 919(e), require notice to counsel as a precondition of the running of the time for appeal. 702 F.2d at 413–14. The court concluded that any such requirement violates the statute's "plain" language, which the court read to mandate notice to the parties and not to

---

9. *Cf. Wellman v. Director, Office of Workers' Compensation,* 706 F.2d 191 (6th Cir.1983). In *Wellman,* a Black Lung Benefits Act case, the claimant's wife received a copy of the ALJ's decision, and promptly contacted the claimant's attorney, who had not received a copy. The attorney notified the ALJ that he had not received a copy of the now-filed decision; in response, the ALJ re-issued the decision under a new date. The claimant's appeal was filed more than thirty days after the issuance of the decision (and its service on claimant's wife), but less than thirty days after the decision was re-issued. The Board dismissed the claimant's appeal as untimely. In a brief *per curiam* opinion from which Chief Judge Edwards dissented, the Court of Appeals for the Sixth Circuit affirmed, noting that the attorney admittedly knew of the ALJ's order at the time it was filed. *Id.* at 192. The court made no reference to 20 C.F.R. § 725.364, the regulation which requires notice to the par-

ties' representatives. Further, claimant appears not to have even argued that notice was inadequate under either the statute or the Secretary's regulations. *Id.* at 192–93.

10. A third possibility, perhaps less plausible, is that the statute might be read to require notice to *both* the parties *and* their legal representatives. *See* 20 C.F.R. § 702.349 (discussed in *Insurance Co. of North America v. Gee,* 702 F.2d 411, 413 (2d Cir.1983)).

11. The relevant portions of 30 U.S.C. § 932(a) are quoted *supra* at note 5. 30 U.S.C. § 936(a) states that:

The Secretary of Labor ... [is] authorized to issue such regulations as [the Secretary] deems appropriate to carry out the provisions of this subchapter. Such regulations shall be issued in conformity with section 553 of Title 5, notwithstanding subsection (a) thereof.

counsel. *Id.* at 414. *Cf. Pittston Steve-doring Corp. v. Dellaventura,* 544 F.2d 35 (2d Cir.1976) (Friendly, J.), *aff'd sub nom. Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).[12] We respectfully disagree. Lawyers and judges routinely refer to arguments made (or actions taken) by counsel as though made by the parties directly; indeed, the Second Circuit in *Gee* refers throughout to the contentions made "by INA." It is similarly routine in the course of litigation to direct copies of court orders or notices of upcoming conferences or hearings to counsel, for the thoroughly sensible reason that non-lawyers will often fail to understand the significance or meaning of such legal documents. In light of the common use of terms like "plaintiff" or "petitioner" to refer to a party's counsel, and in light of the common practice of communicating with parties solely through their lawyers, we think it difficult to justify the view that a statute directing that the parties receive notice of compensation orders can *only* be read to refer to the actual litigants. In short, we do not find the meaning of "the claimant" and "the employer" so plain as to preclude the Secretary's common-sense construction of section 919(e).

There is a second and independent difficulty with the agency's disavowal of the Secretary's regulation. Unlike *Gee, supra,* which arose under the LHWCA, this case is governed by the Black Lung Benefits Act. Section 919 of title 33 is a provision of the LHWCA which applies to this case because of the incorporation provision of the Black Lung Benefits Act. 30 U.S.C. § 932(a). The latter provision incorporates various sections of the LHWCA (including section 919) "except as otherwise provided ... by regulations of the Secretary." *Id.* The obvious import of the qualifying language is that Congress has delegated to the Secretary some measure of authority to supplement or refine the LHWCA provisions which are incorporated into the Black Lung Benefits Act. *See Director, Office of Workers' Compensation Programs v. National Mines Corp.,* 554 F.2d 1267, 1273–74 (4th Cir.1977) (qualifying language "empower[s] the Secretary to depart from specific requirements of the Longshoreman's Act in order to administer the black lung compensation program properly"); Senate Conference Committee Report, *reprinted in* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 94th Cong., 1st Sess., *Legislative History of the Federal Coal Mine Health and Safety Act of 1969* 1624 (Comm. Print 1975) ("The objective of this provision is to provide adequate flexibility" in carrying out the terms of the statute).[13] To the extent that the language of section 919(e) does not by necessary implication require notice to the parties' representatives (but also does not by necessary implication forbid such a require-

---

12. The statute at issue in *Dellaventura* was section 21(c) of the LHWCA, 33 U.S.C. § 921(c), which provided that a claimant could appeal an adverse Board determination to the Court of Appeals "by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside." Judge Friendly, writing for the court, concluded that the sixty-day period was triggered by the issuance of the Board's order, and not by service of that order on the parties. *Dellaventura, supra,* 544 F.2d at 43–44. Section 921(a), unlike 921(c), expressly keys the running of the time period for appeal to the filing of the ALJ's order "as provided in section 919"; the latter provision, as we have seen, directs the ALJ to serve a copy of that order on the parties. 33 U.S.C. §§ 921(a), 919(e).

13. The Court of Appeals for the Fifth Circuit has held that, notwithstanding the "except as other-

wise provided" language of section 932(a), the Secretary may not promulgate regulations which are inconsistent with the terms of incorporated sections of the LHWCA. *See U.S. Pipe & Foundry Co. v. Webb,* 595 F.2d 264, 273 & n. 10 (5th Cir.1979); *Director, Office of Workmen's Compensation Program v. Alabama By-Products Corp.,* 560 F.2d 710, 718 (5th Cir.1977). *See also Director, Office of Workers' Compensations Programs v. Peabody Coal Co.,* 554 F.2d 310, 321–22 (7th Cir.1977) (Secretary may not alter LHWCA provisions which govern federal court jurisdiction). *Cf. Trent Coal, supra,* 739 F.2d at 118 (concluding that the *Board* "has no power to nullify a statutory provision"). We need not determine the precise scope of the Secretary's authority in this case, because the requirement that counsel be served with copies of compensation orders is, in our view, fully consistent with the terms of section 919(e).

ment), the Secretary has "otherwise provided" by promulgating regulations which mandate such notice.[14]

Nor does the requirement that counsel be notified of benefits decisions in any way conflict with the broader scheme of the Black Lung Benefits Act. To the contrary, requiring notification of counsel reflects the important role counsel may play in the decisions to appeal an adverse ruling by the ALJ, and thus advances the efficiency of the administrative process by directing notice to the person who will likely be responsible for filing an appeal if one is taken. It also reduces the likelihood that deserving claimants will fail to assert their right to appeal due to simple ignorance of that right. These goals advance the statute's compensatory purpose without placing any additional burden on the agency. Accordingly, and in light of the presumptive validity which we accord the Secretary's regulations, e.g., Director, Office of Workers' Compensation Programs v. Peabody Coal Co., 544 F.2d 310, 341 (7th Cir.1977), we cannot find that the notice requirement of 20 C.F.R. § 725.364 is invalid. Because the agency concedes that Mr. Patton's attorney did not receive notice of the ALJ's decision, it follows that the governing notice requirement was breached.

IV

■ Because the decision of the ALJ was not properly served on Mr. Patton's representative until at least September 28, 1983, Mr. Patton's appeal was timely filed, and the Board erred in concluding that it lacked jurisdiction over the case. Accordingly, we vacate the Board's order and remand for consideration of Mr. Patton's appeal on the merits.

WEIS, Circuit Judge, dissenting.

Although the majority has reached an equitable result, I must dissent, but without enthusiasm. Through a judicious reading of the controlling statutes and regulations, the majority has in effect found that the regulation providing for service on counsel estops the Secretary from reliance on the statutory limitation period.

The difficulty is that estoppel may not often be invoked successfully against the government. *Heckler v. Community Health Services of Crawford County,* —— U.S. ——, 104 S.Ct. 2218, 81 L.Ed.2d 42 (May 22, 1984). Although adherence to that yields harsh results, it is applied because strict compliance with the law provides assurance that the government will function within the perimeters of the Con-

---

**14.** This court's decision in *Trent Coal, supra,* is not to the contrary. The issue in *Trent Coal* was whether, for purposes of calculating the thirty-day period for filing an appeal, a compensation order was "filed" (1) when it was returned to the Division of Coal Mine Workers Compensation in Washington, D.C., or (2) when it was received by the deputy commissioner's office. *Trent Coal, supra,* 739 F.2d at 117. The statute rather plainly suggests that filing takes place when the order is received by the deputy commissioner, *see* 33 U.S.C. § 921(a), and the two seemingly applicable regulations appear to be in conflict with each other. *Compare* 20 C.F.R. § 725.478 ("the original record of the claim shall be returned to the DCMWC in Washington, D.C. and the decision and order shall be considered to be filed in the Office of the Deputy Commissioner") *with* 20 C.F.R. § 725.479(a) ("A decision and order shall become effective when filed in the office of the deputy commissioner"). This court concluded that, since the statute unambiguously requires filing of orders in the deputy commissioner's office, and since one of the two applicable regulations appears to confirm that requirement, the thirty-day period for appeal does not begin to run until such filing takes place. *Trent*

*Coal, supra,* 739 F.2d at 117–118 (also finding the wording of 20 C.F.R. § 725.478 ambiguous as to when ALJ's order would be deemed "filed").

It is of course sensible to require the Board to hew closely to relatively clear statutory language when the Secretary appears to have enshrined that language in the regulations. The Board, after all, cannot of its own accord "nullify a statutory provision," *id.* at 118, whatever may be the scope of the Secretary's authority under 30 U.S.C. § 932(a). In the instant case, however, we confront quite a different configuration: an unambiguous regulation which construes a facially unclear statutory provision. The Board does not "nullify" the statute if it requires notice to the parties' counsel; the Board does, however, "nullify" a properly authorized regulation if it fails to so require. The interest in clarity and predictability—so vital to litigants when filing deadlines are involved—thus works in favor of adhering to the regulations at issue here, just as it worked in favor of following the statute's clear directive in *Trent Coal.*

stitution. Justice Holmes remarked, "Men must turn square corners when they deal with the Government." *Rock Island, A. & L. R.R. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). That maxim is a two-way street. Those within governmental agencies are also constrained by statutes which both grant and limit their authority. *See, e.g., Miller v. United States,* 294 U.S. 435, 440, 55 S.Ct. 440, 442, 79 L.Ed. 977 (1935) (administrative power confined to that conferred by statute).

The statutory provisions governing the administrative appeal process are straightforward. "The order ... shall be filed in the office of the deputy commissioner, and a copy ... shall be sent ... to the claimant and to the employer at the last known address of each." 33 U.S.C. § 919(e). "A compensation order shall become effective when filed in the office of the deputy commissioner as provided in section 919 of this title and unless proceedings for the ... setting aside of such order are instituted ... [it] shall become final at the expiration of the thirtieth day thereafter." 33 U.S.C. § 921(a).

The statute provides for an administrative appeal within 30 days after filing with the deputy commissioner and after mailing notice to the parties. These are the only two conditions specified in the statute. In adopting regulations, the Secretary may neither take away procedural benefits from the claimant, *Trent Coal, Inc. v. Day,* 739 F.2d 116 (3d Cir.1984), nor confer additional ones inconsistent with the statute. *Insurance Company of North America v. Gee,* 702 F.2d 411 (2d Cir.1983).

As the Court of Appeals for the Second Circuit remarked in *Gee,* although an agency is "usually bound to comply with its own regulations ... this Court will not interpret an agency regulation to thwart a statutory mandate." 702 F.2d at 414. I agree that the Secretary "cannot by regulation place further conditions on the filing of an effective order." *Id. See also, Dawe v. Old Ben Coal Co.,* 754 F.2d 225 (7th Cir.1985); *Wellman v. Director, Office of Workers' Compensation Programs,* 706 F.2d 191 (6th Cir.1983). I conclude that *Gee, Dawe,* and *Wellman* correctly state the law.

The Secretary has not made the point, but it appears from the regulation that service on the representative was intended as a means of satisfying the statutory requirement of service on the claimant. The regulation says that service on the representative "shall have the same force and effect as if it had been sent to the party represented." 20 C.F.R. § 725.301 (1984). Seemingly, the regulation contemplates a circumstance in which the party is not given actual notice but the representative is. In that situation the intention is to fulfill the statutory mandate through substituted service.

In the case at hand, the Secretary served the notice directly on the party. Hence, the claimant has been given exactly what Congress spelled out and not the indirect substitute provided for in the regulation.

Accordingly, I dissent, albeit reluctantly.